UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

BRIAN KEITH MOORE                                                                    PLAINTIFF

v.                                                         CIVIL ACTION NO. 5:13CV-P81-R

PHILIP PARKER, WARDEN *et al.*                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Keith Moore, a state inmate at the Kentucky State Penitentiary (KSP), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against fifteen KSP officers and employees[1] in their individual and official capacities for monetary and punitive damages.[2] This matter is before the Court on initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, a portion of the claims will continue and a portion will be dismissed.

## I. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon

---

[1]Defendants are former Warden Philip Parker; current Warden Randy White; Captains Jay Jones and Troy Belt; Sergeant Anthony Hale; Corrections Officers Richard Moore, Douglas Mumma, C. West, and Susan Knight; "Corrections Employees" "John Doe # One," "John Doe # Two," and "John Doe # Three"; Caseworker William Harvey; Lieutenant Dan Carter; and Unit Administrator Bruce VonDwingelo.

[2]Plaintiff seeks $250,000 in monetary damages against each Defendant and seeks $5,000,000 in punitive damages.

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## II. ANALYSIS

### A.     42 U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d

2

340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1. Official-capacity claims

As KSP officers and employees, all Defendants are state officials. State officials sued in their official capacity for money damages, are not "person[s]" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Accordingly, the official-capacity claims for damages will be dismissed for failure to state a claim and for seeking monetary relief from Defendants who are immune from such relief.

### 2. Individual-capacity claims

#### a. Eighth Amendment claims

A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Hudson v.*

3

*McMillian*, 503 U.S. 1 (1992). This component is contextually driven and is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

> The Constitution "does not mandate comfortable prisons," but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Farmer*, 511 U.S. at 832 (citations omitted).

The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03. "'[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Street*, 102 F.3d at 815 (quoting *Farmer*, 511 U.S. at 836). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-38 (citations omitted).

First, Plaintiff alleges that Defendants Jones, Hale, Moore, Mumma, and West used excessive force against him on April 30, 2012, when they escorted him from his cell in "6 cell house" and transferred him to the institutional hospital. The incident ultimately resulted in

Defendants dragging Plaintiff on the floor about 120 feet by handcuffs and his arms, which caused pain in his shoulders. **The Court will allow this Eighth Amendment claim to proceed against Defendants Jones, Hale, Moore, Mumma, and West.**

Second, Plaintiff claims that the three John Doe Defendants ordered that he not be given his walker, which he needed to walk to the commode and to get food trays and medication. He reports that for the 24-hour period he was without his walker, he had to urinate on the floor and "was forced to go without eating anything for 3 meals and without my medicine for four times that I was suppode to take it." He states that after he got his walker back, he started refusing to take all of his diabetic medicine. "My ill thinking at the time was, since the doctor put me in the infirmary because I could not walk out to the front gate to get my insulin shot at lunch time, I would just stop taking all of my diabetic medicine."

Although Plaintiff was unable to access food, medication, and a toilet without the walker, this access was denied for only one day, and he alleges no resultant physical harm or injury. *See, e.g.*, *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) ("Richmond does not allege that his health suffered as a result of the meal deprivation."); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) ("Plaintiff alleged only temporary inconveniences [that he was deprived of a lower bunk, subjected to a flooded cell, and deprived of a working toilet] and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) ("Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence."). Furthermore, with respect to the one-day denial of medication, Plaintiff alleges

no detrimental effect of the delay in treatment, *see Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001), and he reports that he started refusing his medication himself. The Court, therefore, concludes that Plaintiff has failed to allege facts rising to the level of an Eighth Amendment claim with respect to the denial of his walker by the three John Does, and this claim will be dismissed.

Finally, Plaintiff alleges an Eighth Amendment violation because his placement in segregation "constitutes solitary confinement, No windows, No natual lighting, the light stays on 24 hours a day, No out of cell time at all for exercise, not being able to have conversations with other inmates, almost no human contact, No radio, No TV, and limited reading materials." He reports being sentenced to 90 to 105 days of segregation in May 2012, and apparently beginning his period of segregation in December 2012.

However, "'placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Thus, segregation usually is "insufficient to support an Eighth Amendment Claim.'" *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."); *Hudson*, 503 U.S. at 9 (advising that placement in segregation is a "routine discomfort" that is "'part of the penalty that criminal offenders pay for their offenses against society'") (citation omitted). Plaintiff's placement in segregation under the conditions alleged was of a limited duration. *See, e.g.*, *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("This court has never set a minimum amount of time a prisoner must have access to outdoor recreation.");

*Townsend v. Padula*, No. C/A0:0421879–RBH, 2005 WL 3591984 (D.S.C. Dec. 30, 2005) (finding a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation). More importantly, like above, Plaintiff fails to allege any physical injury resulting from his placement in segregation. *Merchant*, 37 F. App'x at 145-46 ("In any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"). Accordingly, the Court will dismiss the Eighth Amendment claim related to Plaintiff's placement in segregation for failure to state a claim upon which relief may be granted.

### b. Fourteenth Amendment

#### i. Due process

Plaintiff claims that Defendant Mumma "Tried to justify his Unconstitutional action [*i.e.*, the excessive force referenced above] by issuing a write-up and having me placed in segregation" and that Defendant Jones "Tried to justify his Unconstitutional action by issuing a write-up and falsifying the write-up to place me in segregation." Plaintiff alleges that Defendants Mumma and Jones violated the Due Process Clause of the Fourteenth Amendment.

Plaintiff further claims that Defendants Belt, Harvey, and Knight were members of the adjustment committee that reviewed the write-ups. He alleges that they violated the Due Process Clause of the Fourteenth Amendment by not allowing him to call witnesses. He also alleges that on May 15, 2012, the adjustment committee found him guilty on the write-ups issued by Defendants Mumma and Jones and sentenced him to 105 days of segregation.

Plaintiff also alleges that Defendant former Warden Parker "was in charge of the supervision and discipline of all correctional staff at [KSP]" and failed to take any action against

7

staff involved. He reports that Defendant Parker was also responsible for reviewing all administrative appeals of the adjustment committee decisions and that Defendant Parker denied all of Plaintiff's appeals. He asserts that Defendant Parker "let my conviction . . . stand so I had to do the segregation time" and that "placement in the segregation cell that I was in constitutes solitary confinement, No windows, No natual lighting, the light stays on 24 hours a day, No out of cell time at all for exercise, not being able to have conversations with other inmates, almost no human contact, No radio, No TV, and limited reading materials."

Finally, Plaintiff alleges that his due process rights were violated when Defendant Carter ordered his "pre-detention placement in segregation" on December 3, 2012; Defendant VonDwingelo "reviewed the pre-detention order and approve it, when he knew that I didn't meet the requirement for lock up"; and Defendant current Warden White "view[ed] the pre-detention and allow[ed] it to stand even thou as Warden he knew that I didn't meet the requirement for placement in segregation on a pre-detention order."

In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court significantly restricted prisoners' § 1983 claims for relief based on issues concerning due process. The Court made a marked departure from its earlier decisions concerning recognized liberty interests, and instead limited due process liberty interests created by prison regulations "to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484 (citations omitted). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the

sentence imposed by a court of law." *Id.* at 485. The *Sandin* Court found no liberty interest in the inmate's 30-day placement in disciplinary segregation.

Thereafter, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possess a liberty interest in avoiding assignment to Ohio State Penitentiary ("OSP"), the state's only Supermax facility,[3] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson*, 545 U.S. at 223-24. Thus, "[i]n deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and *Austin* considered the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d at 792.

While Plaintiff alleges that he was effectively in "solitary confinement," his placement was not indefinite. The Court finds that Plaintiff has failed to allege circumstances that were an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*,

---

[3]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson*, 545 U.S. at 213.

9

515 U.S. at 485 (stating that while prisoners do not shed all constitutional rights at the prison gate, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system") (citations omitted)). As such, Plaintiff has failed to demonstrate the deprivation of a protected liberty interest that would entitle him to procedural due process protections, and his due process claims fail.

Further, to the extent Plaintiff seeks to hold Wardens Parker and White liable based on their supervisory positions, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Where the only allegation against a defendant relates to the denial of an administrative remedy, a plaintiff fails to allege any personal involvement by the defendant in the alleged wrongful conduct. *See, e.g.*, *Grinter*, 532 F.3d at 576 ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to

liability under § 1983.") (quoting *Shehee*, 199 F.3d at 300); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Plaintiff fails to allege facts showing that Defendants Parker and White committed any direct acts or otherwise were personally involved in any of the alleged due process violations.

For all of the foregoing reasons, Plaintiff's due process claims fail to state a claim upon which relief may be granted and will be dismissed.

### ii. *Equal protection claim*

Plaintiff claims that adjustment committee members–Defendants Belt, Harvey, and Knight–violated his Fourteenth Amendment right to equal protection because "I was not treated Equally . . . on the same kind of write-up." He alleges that he was written up for urinating on the floor for causing or creating a health hazard. He reports that he urinated on the floor because his "knee had blow out on me and I was unable to get to the commode." He states that the adjustment committee dismissed the write-up because he could not get to the commode. Plaintiff reports being written up again for urinating on the floor because his walker was taken away and he was not able to get to the commode. He states that this second time, however, the adjustment committee found him guilty and sentenced him to 90 days in segregation.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prove a violation of the Equal

Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent. *Washington v. Davis*, 426 U.S. 229 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass.*, 442 U.S. at 279.

Plaintiff does not claim that he was treated differently than other inmates, only that he received two different outcomes for the same charges. He also fails to allege any discriminatory purpose or intent on the part of any Defendant. For these reasons, Plaintiff's equal protection claim will be dismissed for failure to state a claim upon which relief may be granted.

**B.      Americans with Disabilities Act (ADA) and Rehabilitation Act (RA)**

Plaintiff sues Defendants Jones, Hale, Moore, Mumma, West and the three John Doe Defendants under the ADA and RA for damages during his escort and transportation to the infirmary and during his detention at the infirmary. He reports being denied a walker or other mobility aide. He states that he is "a disabled person who cannot even get to the commode without being able to use something to get there." He also reports being unable to get his meal trays and medication.

"[N]either the ADA nor the RA impose liability upon individuals." *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (citing 29 U.S.C. § 794(b) (RA); 42 U.S.C. § 12131(1) (ADA)); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) ("[N]either the ADA nor the RA allows suits against government officials in their individual capacity."). Accordingly, the individual-capacity ADA and RA claims against the above-listed Defendants will be dismissed.

**The Court will allow the official-capacity claims under the ADA and RA to continue against Defendants Jones, Hale, Moore, Mumma, West, and the three John Does.**

### III. ORDER

For the foregoing reasons,

**IT IS ORDERED** that the 42 U.S.C. § 1983 Eighth Amendment, excessive-force claims shall proceed against Defendants Jay Jones, Anthony Hale, Richard Moore, Douglas Mumma, and C. West and that the ADA and RA claims shall proceed against those same Defendants and the three John Does in their official capacities. The Court will enter a separate Scheduling Order governing the development of these continuing claims.

**IT IS FURTHER ORDERED** that all other claims are **DISMISSED**. More specifically:

(1) the 42 U.S.C. § 1983 official-capacity claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2) for failure to state a claim upon which relief may be granted and for seeking damages from Defendants immune from such relief, respectively;

(2) the 42 U.S.C. § 1983 Eighth Amendment claims related to Plaintiff being denied his walker and his placement in segregation and all Fourteenth Amendment due process and equal protection claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

3) the individual-capacity ADA and RA claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Because no claims remain against the following seven Defendants, **the Clerk of Court is DIRECTED to terminate them as parties to this action: Philip Parker, Troy Belt, William Harvey, Susan Knight, Randy White, Dan Carter, and Bruce VonDwingelo.**

Date:

cc: Plaintiff, *pro se*
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005