UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00081-TBR

BRIAN KEITH MOORE,                                                                           Plaintiff,

v.

PHILIP PARKER, *et al.*,                                                                      Defendants.

## MEMORANDUM OPINION AND ORDER

Brian Keith Moore, an inmate incarcerated at the Kentucky State Penitentiary, filed this 42 U.S.C. § 1983 action against Captain Jay Jones, Sergeant Anthony Hale, and Corrections Officers Richard Moore, Douglas Mumma, and Christopher West, alleging those officers used excessive force against him. It is undisputed that the Kentucky State Penitentiary's surveillance system captured footage of the incident in question. It is also undisputed that that footage has been destroyed. The question is whether spoliation sanctions (in the form of an adverse inference instruction) are warranted. The Court has reviewed the record and conducted an evidentiary hearing on November 21, 2016. Because the destruction of that footage happened prior to anyone receiving notice of this litigation, the imposition of sanctions is inappropriate. Accordingly, Brian Keith Moore's Motion for Sanctions, [R. 90], is **DENIED**.

### I.

In way of background, Brian Keith Moore filed this 42 U.S.C. § 1983 action against Captain Jay Jones, Sergeant Anthony Hale, and Corrections Officers Richard Moore, Douglas Mumma, and Christopher West on May 23, 2013. [*See* R. 1 at 1 (Complaint).] He alleges that on April 30, 2012, the above-mentioned correctional

officers used excessive force when moving him from his cell to the prison's infirmary, thereby violating his Eighth Amendment rights. [*Id.* at 7–11, 17–18.]

It is undisputed that the Kentucky State Penitentiary's surveillance system captured footage that incident. It is also undisputed that that footage has since been destroyed. On account of those circumstances, Moore requests spoliation sanctions (in the form of an adverse inference instruction) against the correctional officers. [*See* R. 90 at 1 (Motion for Sanctions).]

## II.

In deciding whether to assess sanctions for spoliation, the Court conducts a two-step inquiry. *In re Black Diamond Min. Co.*, 514 B.R. 230, 237 (E.D. Ky. 2014). First, the Court must determine whether sanctions are appropriate at all. *Id.* A spoliation sanction is warranted where the moving party establishes:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)); *see also Adkins v. Wolever*, 692 F.3d 499, 504 (6th Cir. 2012) (holding all three-factors must be satisfied before spoliation sanction is permitted). Second, upon finding that sanctions are warranted, the Court enjoys considerable discretion in fashioning a suitable remedy. *See Adkins v. Wolever*, 54 F.3d 650, 652–53 (6th Cir. 2009) (en banc); *Flagg v. City of Detroit*, 715 F.3d 165, 177–78 (6th Cir. 2013).

## III.

The principal issue in this discovery dispute is *when* the Kentucky State Penitentiary destroyed the footage in question. An obligation to preserve evidence, after all, only arises "when a 'party has notice that the evidence is relevant to litigation or . . . should have known that the evidence [might] be relevant to future litigation.'" *O'Brien v. Ed Donnelly Enters., Inc.*, 578 F.3d 567, 587 (6th Cir. 2009) (omission in original) (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, ––– U.S. –––, –––, 136 S. Ct. 663 (2016); *see also Beaven*, 622 F.3d at 553 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Consequently, if the surveillance footage was destroyed prior to anyone having actual or constructive notice of this litigation, or the reasonably possibility thereof, an adverse inference instruction would be inappropriate. *See Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 796 (6th Cir. 2006).

In this case, Moore claims that the surveillance footage was destroyed at a time that the correctional officers had actual notice of litigation. [*See* R. 90-1 at 1–3, 6–7 (Memorandum in Support); R. 98 at 1–2 (Reply).] In support of that theory, Moore points to a pleading in which the correctional officers certified that

> no audio or video recordings of the April 30, 2012 incident exist. In accordance with Department of Corrections' retention policy, all audio and video are destroyed after two years.

[R. 42 at 1 (Certification of Completion of Discovery).] Moore reads that except as a judicial admission that the footage had been destroyed sometime on or about April 30, 2014, [*see* R. 90-1 at 5], months *after* all involved had actual notice of his lawsuit, [*see* R. 11 at 1 (Waiver of Summons)].

While Moore's interpretation of that pleading is not unreasonable, ultimately, it is mistaken. Randy White, the Warden of the Kentucky State Penitentiary, testified

3

thoroughly and credibly that the digital surveillance system in question is capable of retaining roughly fourteen, but no more than thirty, days of footage. The system constantly "writes over" older data with newer data. To preserve footage of a particular incident, then, one must access the server and copy that data onto an external storage device before the footage is automatically overwritten. Otherwise, the footage will be lost in the system's ordinary course of operation. The two-year retention policy only applies to footage preserved in the aforementioned manner.

Here, the surveillance footage was destroyed in the course of regular business, long before anyone associated with the Kentucky State Penitentiary had notice, actual or otherwise, of Moore's lawsuit. The incident at the heart of Moore's claim transpired on April 30, 2012. [*See* R. 1 at 7–11.] It is undisputed that the surveillance footage of that incident was not copied to an external storage device and, therefore, was automatically erased no later than May 30, 2012. Since Moore did not initiate this lawsuit until May 23, 2013—almost a year after that date—the correctional officers were not on notice that Moore might need the footage until several months after it had already been destroyed. Likewise, there is nothing in the record to suggest that the correctional officers should have anticipated the possible relevance of the footage at an earlier point.[1] Given the absence of an obligation to preserve the footage in question, an adverse inference instruction is not justified as a spoliation sanction.

---

[1] Although the record does contain copies of four disciplinary citations issued to Brian Keith Moore, it does not appear to contain any inmate grievances related to the April 30, 2012 incident. Of the four disciplinary citations, two are unrelated to the April 30 incident. [*See* R. 42-3 at 1–8 (Disciplinary Report No. KSP-2012-00826); R. 42-4 at 1–13 (Disciplinary Report No. KSP-2012-00835).] The remaining two disciplinary citations involve Moore's failure to obey commands from Corrections Officer Douglas Mumma and Captain Jay Jones on the morning of April 30, ultimately leading up to the incident in question. [*See* R. 42-1 at 1–13 (Disciplinary Report No. KSP-2012-00820; R. 42-2 at 1–13 (Disciplinary Report No. KSP-2012-00816).] Those disciplinary citations were resolved without resort to, or mention of, any surveillance footage. [*See* R. 42-1 at 1; R. 42-2 at 1.] Therefore, it is hard to say that the correctional officers were obligated to preserve the surveillance footage on that basis.

## IV.

**IT IS HEREBY ORDERED** that Brian Keith Moore's Motion for Sanctions, [R. 90], is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc:     Counsel of Record